## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE JULIAN CRUZ-BERRIOS,

      Petitioner,

      v.

LESTY BORRERO *et al*,

      Respondents.

                           Civil No. 14-1232 (ADC)

### <u>AMENDED OPINION & ORDER</u>

Pending before the Court is petitioner José Julián Cruz-Berríos ("petitioner" or "Cruz-Berríos") request for *habeas* relief under 28 U.S.C. § 2254. **ECF No. 2**. After holding an evidentiary hearing, on August 19, 2019 Magistrate Judge Silvia Carreño-Coll issued a Report and Recommendation ("R&R") recommending that petitioner's request for *habeas* relief under 28 U.S.C. § 2254 be granted. **ECF No. 188**. On September 3, 2019, petitioner objected to the R&R. **ECF No. 192**. On September 16, 2019, Lesty Borreto and César R. Miranda-Rodríguez (hereinafter collectively "respondents") filed their objections to the R & R. **ECF No. 198**.

For the reasons explained below, the Court hereby **ADOPTS** the R&R. Accordingly, Cruz-Berríos' petition under § 2254 at **ECF No. 2** is **GRANTED**.

### I.      Undisputed Facts

As recounted in the R&R, this case stems from facts occurring on the night of August 26, 1999, when a robbery took place at the residence of Ángel Antonio Ortíz-Burgos ("Ortíz-

Burgos") and his wife, Marta Meléndez, in Helechal Ward, Barranquitas, Puerto Rico. According to the statement that Ortíz-Burgos gave to Puerto Rico Police Department ("PRPD") case agent José Vega López ("agent Vega"), on the night of the events, he was with his wife at his neighbor's house. A white vehicle with tinted windows and a government license plate drove by the front of their home several times. Ortíz-Burgos and his wife went back to the house because their young daughter was there with a friend. As they approached, they saw the white vehicle near the gate. Their son had arrived at the house a few minutes before, accompanied by the brother of the girl that was in the house with Ortíz-Burgos' daughter. The visitors left the house.

Thinking that the white vehicle was a police car because it had government license plates, Ortíz-Burgos asked his son whether he had done anything wrong. At that moment, a man got out from the back left-seat, grabbed Ortíz-Burgos' wife and announced the robbery. The assailants took the family inside the house. Both men had their faces covered. A third participant was driving the getaway car. One of the assailants was wearing a pantyhose as a mask, but from his weight, height, physical characteristics, and mostly his voice, Ortíz-Burgos said he recognized him. When he opened the refrigerator door, Ortíz-Burgos allegedly saw the shadow of his face through the pantyhose with help from the refrigerator's light. Ortíz-Burgos identified the perpetrator as petitioner, whom he knew because they were both from the town of Barranquitas, and petitioner was a customer at Ortíz-Burgos' two businesses. The other two assailants were never identified. The car with the government license plates was not found. No physical evidence and fingerprints were recovered.

### A. State Procedural Background

On or around January of 2000, petitioner was accused by the Commonwealth of Puerto Rico of robbery and violations of Puerto Rico's Weapons Law for the events that occurred on August 26, 1999. Cruz-Berríos waived his right to a jury trial. During the bench trial, the prosecution called several witnesses to the stand including Ortíz-Burgos and his wife, agent Vega, and Héctor Rivera-Mateo ("Rivera-Mateo"), an inmate who had a one-time interaction with petitioner while in prison. Rivera-Mateo, who knew both petitioner and Ortíz-Burgos, testified that while they were both incarcerated, petitioner had admitted that he committed the robbery at Ortíz- Burgos' home. During his testimony, Ortíz-Burgos identified petitioner as the assailant. His wife did not.

The defense also called various witnesses to the stand. Petitioner's former attorney[1] Julio Eduardo Torres-Ortíz ("attorney Torres") testified that Ortíz-Burgos told him he had doubts about whether petitioner perpetrated the robbery. Félix J. Muñiz-Maldonado, coordinator of criminal records in the Correctional Department's southern region, and Orlando Bermúdez-López, a Lieutenant at the Ponce Correctional Center's Institution 246, both testified as to petitioner and Rivera-Mateo's records at the correctional facility, where they were housed during their respective incarcerations, and whether the inmates had an opportunity to communicate at some point.

---

[1] Attorney Torres represented petitioner during the pretrial hearing and filed the motion to suppress the eyewitness identification of petitioner by Ortíz-Burgos.

After a bench trial, on November 8, 2001, petitioner was found guilty, and because he stipulated his criminal history, he was sentenced to life in prison. Thereafter, petitioner began a long and arduous journey to set aside his conviction.[2] Petitioner appealed his conviction to the Puerto Rico Court of Appeals ("PRCA") which affirmed the Court of First Instance's ("CFI") determination on September 30, 2002 (*see* Case No. KLAN0101206). *See* **ECF No. 56-1; 139-2**. Shortly thereafter, on December 13, 2002, the Puerto Rico Supreme Court ("PRSC") denied *certiorari*. *See* **ECF No. 139-3**.

Cruz-Berríos filed a total of four motions for new trial under Rule 192.1 of the Puerto Rico Code of Criminal Procedure[3], 34 L.P.R.A. Ap. II, R. 192.1. The first of such motions was filed on December 12, 2003, requesting an argumentative hearing and requesting revocation of his conviction on various grounds. *See* **ECF No. 22-1**; **ECF No. 139-1**. It was denied on December 31, 2003, and then appealed to the PRCA and the PRSC which denied the writ of *certiorari*. *Id.* In the interim, on March 23, 2004, Cruz-Berríos filed a petition for *habeas corpus* relief at the PRCA, which was denied on September 30, 2004. *See id*. His second motion for new trial was filed on July 31, 2006. *See id.* Cruz-Berríos alleged he had discovered new evidence and requested a court-appointed attorney. On August 11, 2006, his requests were denied. *See id.* Petitioner's appeals on these motions were also denied. *See id.* Petitioner's third motion for new trial, based

---

[2] The Court construes the record largely from the state courts' rulings, the filings submitted by the parties which were duly translated, and the witnesses' testimony during the evidentiary hearing. However, many of the documents mentioned for procedural purposes are not part of the record before this Court.

[3] The Court cites the state court decisions which provide procedural backgrounds of petitioner's various recourses.

on ineffective assistance of counsel, was filed on October 2, 2006 and denied on October 9, 2006. *See id.* Petitioner's *certiorari* to the PRCA was denied on May 15, 2007 and his *certiorari* to the PRSC was denied on January 25, 2008. *See id.* Petitioner's two motions for reconsideration to the PRSC were denied on February 14 and March 14, 2008. *See id;* **ECF No. 139-24.**

On October 29, 2007, Cruz-Berríos was interviewed by the Special Affairs and Remedies Post Sentence Division of the Society for Legal Aid ("SLA"), which initiated an investigation into his case. To avoid duplicity, the SLA closed the investigation when petitioner filed an action in federal court.[4] In 2009, the Office of the Puerto Rico Secretary of Justice referred a complaint to the Office of Inspector General ("OIG") for investigation pursuant to petitioner's complaint. Specifically, petitioner set forth allegations of misconduct against the prosecutor in his criminal case, Francisco Sánchez-Rodríguez ("prosecutor Sánchez"). During 2009 and 2010, the OIG reviewed documents, interviewed various witnesses, and gathered evidence regarding petitioner's case. *See* **ECF No. 56-7 & 156-1.**

As part of their investigation, the OIG interviewed and obtained sworn statements from prosecutor Sánchez, agent Vega, PRPD investigating agent Ángel Sánchez-Rivera ("agent Sánchez") who was the first to interview victims the day after the robbery and drafted the police report of the incident, attorney Torres, the victim Ortíz-Burgos and Rivera-Mateo. They also interviewed petitioner's attorney during the suppression hearing and criminal trial, Antonio Ortíz-Rodríguez ("attorney Ortíz"). Upon conclusion of the investigation, on October 27, 2010,

---

[4] *See* **Civil No. 08-1693**, filed on June 30, 2008 and which will be discussed below.

OIG Special Prosecutor Gamalier Oliveras Alvarez ("Oliveras") sent a letter to the SLA, which represented petitioner at the time, disclosing his findings and producing the sworn statements obtained during the investigation. **ECF No. 156-1**. The letter sent to the SLA states that the OIG obtained potentially exculpatory evidence. *Id.* Eventually, another Inspector General was appointed, and Oliveras was ordered to surrender the case file. No official report was issued by the OIG.

With these documents, petitioner submitted his fourth and final motion for new trial on November 9, 2010, alleging that the newly obtained exculpatory evidence warranted a new trial. **ECF No. 186-4**. The CFI held an evidentiary hearing on June 23, 24, 30 and July 1, 2011[5]. *See* **ECF No. 139-14** at 4; **ECF Nos. 56-2, 56-3, 56-4, 56-5, 56-6**. On August 1, 2011, the CFI once again denied petitioner's request for new trial. *See* **ECF No. 139-14**. Cruz-Berríos moved for reconsideration and, on December 5, 2011, the motion was denied. **ECF No. 139-15.** Cruz-Berríos filed an appeal, which was also denied on May 30, 2012. *See* **ECF No. 22-1**. Petitioner's request for reconsideration to the PRCA was denied on August 20, 2012. **ECF No. 139-16**. On September 19, 2012, he filed a writ of *certiorari* before the PRSC which was denied. **ECF No. 139-18**. Petitioner's both motions for reconsideration to the PRSC were also denied on February 8 and March 13, 2013. *See* **ECF No. 56-11, 139-19 & 138-20**.

---

[5] In their Objections to the R&R, respondents noted the correct dates of the evidentiary hearing. *See* **ECF No. 198** at 27.

### B.  Federal Procedural Background

In the interim, petitioner also sought relief in federal court. Cruz-Berríos filed his first *habeas corpus* petition pursuant to 28 U.S.C. § 2254 on September 12, 2003. *See* **Civil No. 03-1995**. Based on a report and recommendation, District Judge Juan M. Pérez-Giménez dismissed the petition for failure to exhaust state court remedies. *See* **Civil No. 03-1995**, **ECF Nos. 139-5, 139-6** and **139-7**. Specifically, petitioner had yet to avail himself to state post-conviction remedies, namely, under Puerto Rico Rule of Civil Procedure 192.1. *See* **Civil No. 03-1995, ECF No. 13**. As such, petitioner went back to state court to exhaust such remedies.

Petitioner again moved for *habeas* relief on June 30, 2008. *See* **Civil No. 08-1693**. After finding that the petition filed was a mixed one, containing both exhausted and unexhausted claims, the court granted petitioner until April 28, 2010, to inform whether he would dismiss the unexhausted claims and continue only with the sole exhausted claim, or would instead withdraw the entire petition. *See* **Civil No. 08-1693, ECF No. 42**. Cruz-Berríos failed to comply. Accordingly, and pursuant to the "total exhaustion rule," *see Rose v. Lundy*, 455 U.S. 509, 520-22 (1982), on April 30, 2010, District Judge Carmen Consuelo Cerezo dismissed without prejudice the entire § 2254 petition. *See* **Civil No. 08-1693, ECF No. 44**.

The third and final § 2254 petition was filed on March 19, 2014. *See* **ECF No. 2**. Petitioner claims (1) violations of his Fifth and Fourteenth Amendment due process rights as a result of prosecutorial misconduct; *Brady*[6] violations, and general gross misconduct leading to

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

nondisclosure and denial of pre-trial and post-conviction exculpatory evidence; and (2) violations of his Sixth Amendment right for ineffective assistance of counsel during his criminal case. *See* **ECF No. 2.** Petitioner further points to the state courts' generalized disregard for his constitutional claims and the exculpatory evidence obtained which consists of the recanted testimonies of the criminal trial witnesses. *Id.*

Respondents filed a Motion to Dismiss for failure to state a claim, which was denied on September 9, 2015. **ECF No. 40.** They subsequently answered the complaint. **ECF No. 42**. On November 26, 2018, respondents moved for summary judgment arguing that this Court lacked jurisdiction. **ECF No. 139**. Petitioner opposed (**ECF No. 159**), and respondents replied (**ECF No. 163**). The Court adopted the R&R's recommendation to deny respondents' motion for summary judgment and issued an Opinion and Order to that effect. *See* **ECF Nos. 188 & 201**.

## II.    Legal Standard

### A.  Review of R&R

Magistrate judges are granted authority to make recommendations on various matters, but the ultimate resolution of a claim remains at the discretion of the presiding judge. *See* Fed. R. Civ. P. 72; *accord* Loc. Civ. R. 72. A party may object to the magistrate's findings and recommendations within a specified timeframe. Fed. R. Civ. P. 72(b)(2). The presiding district judge must review "*de novo* any part of the magistrate judge's disposition that has been properly objected to." *Id*. In conducting this review, the district judge is free to "accept, reject, or modify the recommended disposition." *Id*. R. 72(b)(3). However, "[t]he district judge need not normally

conduct a new hearing and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record." Loc. Civ. R. 72(d).

Even though timely objections to a report and recommendation entitle the objecting party to *de novo* review of the findings, "the district court should be spared the chore of traversing ground already plowed by the Magistrate." *United States v. Morales-Castro*, 947 F. Supp. 2d 166, 170-171 (D.P.R. 2013) (citing *Gonzalez-Ramos v. Empresas Berríos, Inc.*, 360 F.Supp.2d 373, 376 (D.P.R. 2005). Thus, a plaintiff's objections to an R&R "are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp.2d 32, 34 (D.P.R. 2004). As held in this District,

> If the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.
> *Id*. (quoting *Sackall v. Heckler*, 104 F.R.D. 401, 402-403 (D.R.I. 1984)).

Accordingly, where the objections are repetitive of the arguments already made to the magistrate judge, a *de novo* review is unwarranted. *Pabon-Mandrell v. United States*, 91 F. Supp. 3d 198, 201 (D.P.R. 2015) (finding that).

Petitioner timely objected to the R&R in this case, specifically challenging the R&R's finding of fact that "Mr. Cruz argued that his attorney should have corrected the trial court's impression that Ortíz-Burgos identified him so expeditiously when it wasn't until two days after

incident (August 28) that the victim first signaled him as the culprit." *See* **ECF No. 192** at 3. According to petitioner, the victim identified him *four* days after the incident. *Id.* Petitioner further objects to the R & R's conclusion that petitioner's counsel was not ineffective on appeal. *Id.* at 3-5. Respondents also filed timely objections to the R&R, challenging its conclusions of law as to this Court's jurisdiction[7], the finding of ineffective assistance of counsel and prosecutorial misconduct. **ECF No. 198**.

   **B.** *Habeas Corpus* **under 28 U.S.C. § 2254**

   Section 2254(a) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") empowers a federal court to entertain a petition for writ of *habeas corpus*, on behalf of a person in custody pursuant to a judgment of a state court, if there is a violation of his or her federally protected rights under Section 2254. The petition must be opportunely filed, and the petitioner must have exhausted the remedies available in the courts of the corresponding state. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).[8]

---

[7] The Court rejected these objections in the Opinion and Order issued at **ECF No. 201**.

[8] Under applicable Puerto Rico law, the exhaustion of remedies entails that the prisoner first seek post-conviction collateral relief under Puerto Rico Rule of Criminal Procedure 192.1. P.R. Laws Ann. tit. 34, App. II, Rule 192.1. *See Rodríguez v. Warden, Escuela Industrial de Mujeres*, 791 F. Supp. 41, 42 (D.P.R. 1992). Additionally, "a prisoner seeking relief under [section] 2254 must complete at least one full round of post-conviction relief by pursuing the remedy provided by Rule 192.1 all the way to the Puerto Rico Supreme Court." *Martínez-González v. Rodríguez-Madera*, 2013 WL 625312 at *2, 13-cv-1005 (SEC) (D.P.R. Feb. 20, 2013). Alternatively, after pursuing a motion for collateral relief under Rule 192.1 at the lower court, but prior to filing a petition for federal *habeas* relief, the prisoner shall seek habeas relief under P.R. Laws Ann. tit. 34, § 1741 ("Section 1741"). In that case, the petition for writ of *habeas corpus* under Section 1741 must be pursued all the way to the Puerto Rico Supreme Court. *Id.*; *see also Pérez Arocho v. Wanders*, 2014 WL 8590091 at *2, 13-cv-1472 (CCC) (D.P.R. Feb. 28, 2014); *González Rivera v. Commonwealth of Puerto Rico*, No. 06-1946, slip. op. at 2 (1st Cir. Aug. 1, 2007) ("The availability of other state remedies does not preclude a finding of exhaustion if the petitioner pursued a claim through one complete round of state trial-appellate or post-conviction proceedings").

AEDPA sets out a separate and demanding standard applicable to review of a state court's factual findings. *Pike v. Guarino*, 492 F.3d 61, 68 (1st Cir. 2007). The state court's factual findings are "presumed to be correct" unless the petitioner can rebut this "presumption of correctness" with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Kitchens v. Smith*, 401 U.S. 847, 91 (1971). Thus, "[w]hen faced with a claim for habeas relief that was adjudicated on the merits in state court, the court must first ask whether the state court's adjudication of the claim was unreasonable under either of the two prongs of § 2254(d)." *López v. Miller*, 915 F. Supp. 2d 373, 418 (E.D.N.Y. 2013). Under § 2254 (d), a federal court may not grant *habeas* relief on claims that have previously been adjudicated by a state court on the merits unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2).

A decision is "contrary to" "clearly established federal law" within the meaning of § 2254(d)(1), if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In this context, "clearly established Federal law" refers to the holdings of the Supreme Court's decisions at the time of the state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). With respect to the "unreasonable application" under §2254(d)(1), the Supreme Court notes that a writ

must issue "if the state court identifies the correct governing legal principle" but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal *habeas* court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Williams*, 529 U.S. at 409. A "state court decision may be unreasonable if it is devoid of record support for its conclusions or is arbitrary." *McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002).

The other "category of state-court errors that may be remedied on federal habeas review involves unreasonable determinations of fact." *Ouber v. Guarino*, 293 F.3d 19, 27 (1st Cir. 2002) (citing 28 U.S.C. § 2254(d)(2)). "Under this standard, the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." *Id.* (citing *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001)). The First Circuit noted that "the special prophylaxis of section 2254(d)(2) applies only to determinations of 'basic, primary, or historical facts.'" *Id.* (citing *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001)).

To find that a state court decision is unreasonable under § 2254(d), a federal court must not merely find that the decision was reached in error, but that "some increment of incorrectness beyond error" has been committed by the state court. *McCambridge*, 303 F.3d at 36. "The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.*

Even if the petitioner surpasses the § 2254(d) hurdle, the court may nonetheless grant *habeas* relief only if the petitioner has shown a violation of federal law under § 2254(a). *López*, 915

F. Supp.2d at 418-419 (citations omitted). "In that second analysis, the court reviews the claim *de novo—i.e.*, with no deference to the state court's legal conclusions." *Id.* (first citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("[w]hen a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires."); then citing *Detrich v. Ryan*, 677 F.3d 958, 982 (9th Cir. 2012) (although Panetti's analysis was addressed to § 2254(d)(1), the court could "see no reason why [its] approach should be different where a state court's adjudication of a claim is dependent on an antecedent unreasonable determination of fact" under § 2254(d)(2)). At this point, "the court may consider evidence that was not before the state court, including evidence produced at a federal evidentiary hearing.")

While it is true that the Supreme Court has held that state courts are presumed to have adjudicated a petitioner's federal claims on the merits, thus subjecting such claims to deferential review under § 2254(d), such a presumption can be rebutted under certain circumstances. *See Johnson v. Williams*, 568 U.S. 289 (2013). When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court or is contrary to clearly established Supreme Court precedent, §2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge. *Johnson*, 568 U.S. at 303 (finding that "even while leaving 'primary responsibility' for adjudicating federal claims to the States, … AEDPA

permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent").

## C. Ineffective Assistance of Counsel

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted). The prejudice requirement, meanwhile, necessitates a demonstration of "a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation and internal quotation marks omitted). Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012).

Under AEDPA, however, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard," which is the question we would ask if

the claim came to us "on direct review of a criminal conviction in a United States district court."

*Shuman v. Spencer*, 636 F.3d 24, 31 (1st Cir. 2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011)).

An ineffective assistance of counsel claim is a mixed question of law and fact and should therefore be reviewed under the "unreasonable application" clause of § 2254(d)(1). *Shuman*, 636 F.3d at 31 (citing *Yeboah-Sefah*, 556 F.3d at 70). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.* (citing H*arrington*, 131 S. Ct. at 788).

### D. Prosecutorial Misconduct

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that, "irrespective of good or bad faith, suppression by the prosecution of evidence favorable to a defendant who has requested it violates due process where such evidence is material to either guilt or punishment." *Campusano v. United States*, 976 F. Supp. 2d 89, 105 (1st Cir. 2013). *Brady* "imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence that is materially favorable to the accused, either as direct or impeaching evidence." *Id. Brady* material includes, among others, evidence tending to show perjury by a government witness and evidence impeaching the credibility of a government witness. *United States v. Panzardi-Alvarez*, 646 F. Supp. 1158, 1162 (D.P.R. 1986). On various occasions, the Supreme Court has referred to the

prosecution's knowing use of perjured testimony as a category of *Brady* error. *See Strickler v. Greene*, 527 U.S. 263, 280-81 (1999); *United States v. Agurs*, 427 U.S. 97, 103-04 (1976).

Accordingly, "[o]btaining a conviction by presenting testimony known to be perjured 'is inconsistent with the rudimentary demands of justice.'" *United States v. González-González*, 258 F.3d 16, 21 (1st Cir. 2001) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *see also Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (petitioner's allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody).

The Supreme Court has consistently held that a new trial is required if there is a reasonable likelihood that the false testimony of a witness could have affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264 (1959); *Strickler*, 527 U.S. at 280-81; *Agurs*, 427 U.S. at 103-04; *Fernández v. Capra*, 916 F.3d 215, 230 (1st Cir. 2019). This follows the reasoning that the knowing use of perjured testimony is fundamentally unfair and "involves a corruption of the truth-seeking function of the trial process." *Agurs*, 427 U.S. at 104. The First Circuit has noted that if the state court misunderstands this, "AEDPA would not shield the state court's decision on prejudice from plenary review." *Perkins v. Russo*, 586 F.3d 115, 119 (1st Cir. 2009).

All misconduct, however, does not necessarily entail a new trial. "The determination of whether prosecutorial misconduct has so poisoned the well that a new trial is required involves the weighing of several factors: (1) the severity of the misconduct; (2) the context in which it

occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendant." *González-González*, 258 F.3d at 25 (citing *United States v. Rodríguez-De Jesús*, 202 F.3d 482, 485 (1st Cir. 2000) (internal quotation marks and citations omitted).

### III.   Analysis

#### A.  Petitioner's objections

Petitioner first objects to the following statement within the R&R, "Cruz-Berríos avers that his attorney should have corrected the trial court's impression that Ortíz Burgos identified him so expeditiously when it wasn't until two days after the incident (on August 28th) that the victim first signaled him as the culprit." **ECF No. 188** at 39. According to petitioner, the victim purportedly identified him four days after the robbery, that is, on August 30, 1999. To support his contention, petitioner cites **ECF No. 186-2**, a transcript of the suppression hearing held in 2000 before the CFI, and **ECF No. 186-6**, a motion for reconsideration filed by petitioner objecting to the denial of his last motion for new trial.  Citing the transcript of the suppression hearing at **ECF No. 186-2**, petitioner points out that at the suppression hearing held during the criminal case, Ortíz-Burgos testified that "it was not until several days after the incident", perhaps as many as 'four days' later, that he allegedly identified [petitioner] as one of the assailants."

A careful review of the filings shows that Ortíz-Burgos' identification of petitioner as well as the timing of such identification was pivotal to the trial judge's final determination of petitioner's culpability. Based on agent Vega's testimony that he was the first PRPD officer to

interview the victims the day after the robbery and that Ortíz-Burgos identified petitioner during said interview, the trial court concluded that Ortíz-Burgos identified petitioner the day after the robbery. *See* **ECF No. 58-2** at 30, 62. However, the record to date shows otherwise. It is clear that agent Sánchez, not agent Vega, was the first PRPD agent to interview the victims the day after the robbery. *See* **ECF No. 180-2**. The day after the robbery, Ortíz-Burgos did not identify petitioner as the perpetrator to agent Sánchez when said agent interviewed Ortíz-Burgos and his family. *Id.* In the police report prepared by agent Sánchez dated August 27, 1999, he notes that the victims provided descriptions of the three perpetrators but there is no mention of Ortíz-Burgos identifying the petitioner that day. *Id.* In fact, during the evidentiary hearing held by Magistrate Judge Carreño, agent Sánchez confirmed that Ortíz-Burgos and his wife did not identify the perpetrator when he interviewed them on August 27, 1999, and instead just provided physical descriptions of the three suspects. **ECF No. 168** at 87.

The record further shows that Ortíz-Burgos identified petitioner as the culprit several days after the robbery took place. During the suppression hearing, the prosecutor expressly stated that Ortíz-Burgos identified petitioner via an August 30, 1999 sworn statement[9], that is, four days after the robbery. **ECF No. 186-2** at 38-39. Agent Vega confirmed this fact during the hearing on the motion for new trial held by the CFI in 2011. *See* **ECF No. 139-14** at 33; **ECF No. 56-5** at 169. Nevertheless, at the hearing, agent Vega also testified that he had interviewed Ortíz-

---

[9] Although the parties have made reference to the August 30, 1999 sworn statement, such document is not part of the record before this Court.

Burgos and his family on August 28, 1999 and on that date, Ortíz-Burgos identified petitioner as the perpetrator. **ECF No. 139-14** at 16-17**; ECF No. 56-5** at 168. During the evidentiary hearing held before Magistrate Carreño, agent Vega likewise confirmed that he had interviewed Ortíz-Burgos and his wife on August 28, 1999. **ECF No. 168** at 101. Upon questioning by counsel as to why he informed the OIG that he conducted the interview on August 27, agent Vega testified that he had made a mistake regarding the exact date when the interview took place. *Id.* at 102. Considering the foregoing, the Court finds that Ortíz-Burgos identified petitioner two days after the robbery – on August 28, 1999 – during his interview with agent Vega and rendered a sworn statement to that effect on August 30, 1999. Accordingly, petitioner's initial objection is overruled.

Petitioner also objects to Magistrate Judge Carreño's finding that counsel was not ineffective on appeal. Petitioner contends that in the R&R, the Magistrate Judge "misapprehended" his argument and "reframed the issue as follows: whether stipulating a narrative of the trial record 'rather than [reproducing] the entire record' on appeal constitutes ineffective assistance of counsel." **ECF No. 192** at 4. According to petitioner, his attorney's failure to include a transcript of the suppression hearing or to summarize it as part of the stipulated narrative on appeal constitutes ineffective assistance of counsel. *Id.* Petitioner contends that the inclusion of the suppression hearing transcript would have supported his claim that there was

insufficient evidence to convict him.[10] *Id.* Petitioner holds that introducing the suppression hearing transcript on appeal would have ensured that the PRCA reviewed said police reports and possibly produced a different outcome. *Id.*

The Court notes, however, that Magistrate Judge Carreño expressly addresses petitioner's claim on whether the exclusion of the suppression hearing transcript constituted ineffective assistance of counsel. At page 40 of the R&R, in summarizing petitioner's contentions, Magistrate Judge Carreño notes that according to petitioner, "his attorney stipulated a narrative summary of the evidence to present to the Court of Appeals when he should have instead reproduced the entire record. Most notably, [attorney] Ortíz-Rodríguez did not include the transcript, or a summary, of the suppression hearing at the state court. Cruz-Berríos argues that the omission left the appellate court with an insufficient basis for review." *See* **ECF No. 188** at 40. The Magistrate Judge expressly concluded that although petitioner's attorney did not include the transcript of the suppression on appeal, "his appeal raised the issue that was at the heart of the motion to suppress: the challenge to the eyewitness identification." **ECF No. 188** at 41. Consequently, the R&R concludes that the PRCA was "privy to the procedural history of the case as well as key aspects of Cruz-Berríos' claims of innocence." *Id.* Thus his counsel was not ineffective on appeal.

---

[10] This is premised on the argument that during the suppression hearing, the parties introduced the police reports related to the robbery wherein there was evidence showing that agent Vega had not visited Ortíz-Burgos at his home the day of the robbery and that the victims did not single out petitioner as one of the perpetrators that day. **ECF No. 192**.

In a §2254 petition, this Court must determine whether the state court's application of the *Strickland* standard was unreasonable. The question is not whether counsel's actions were reasonable but rather whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. The Court finds that on appeal, petitioner's counsel satisfied *Strickland*. A review of the PRCA's September 30, 2002 decision denying petitioner's appeal shows that the appellate court was aware of various issues incidental to petitioner's arguments regarding the sufficiency of the evidence and the eyewitness identification of petitioner. *See* **ECF No. 139-2**. Also, the PRCA knew that the lower court had previously suppressed the identification of petitioner and that finding was later vacated by the PRCA. *Id.* Despite the contradictions regarding Ortíz-Burgos' testimony, which were expressly noted by the trial judge, the PRCA held that no elements of partiality or manifest error were present to justify its intervention with the lower court's findings. *Id.* at 32. Subsequently, in the May 30, 2012 decision denying petitioner's *certiorari* and his request to vacate the CFI's denial of a new trial, the PRCA concluded that petitioner's legal counsel performed his job as required by law while presenting the narrative statement to the PRCA back in 2001. **ECF No. 22-1** at 26.

The record shows that petitioner's counsel submitted ample arguments to the PRCA regarding petitioner's innocence as well as the lack of prompt and proper eyewitness identification during the trial. Albeit not including the transcript of the suppression hearing as part of the evidence on appeal was likely not the best course of action, especially considering that petitioner's focus was the impeachment of Ortíz-Burgos' credibility, the fact is that the

PRCA ultimately deferred to the trial court's credibility findings. **ECF No. 139-2** at 32. The PRCA did so despite the trial judge's statements regarding the numerous contradictions in the witnesses' testimonies. Thus, the inclusion of the suppression hearing transcript would not have altered the PRCA's ultimate conclusion. It would have merely added to the plethora of conflicting statements that the PRCA deferred to the trial judge. Petitioner therefore has not established that counsel's failure to submit the suppression hearing transcript prejudiced him. *See cf. Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1997) (holding that petitioner did not establish that his appellate counsel's failure to provide the Court of Criminal Appeals with a full transcript of the suppression hearing in any way prejudiced him where on appeal the appellate court cannot disturb the trial court findings based on the record and the credibility of the witnesses.)

It is clear from the record that the state court's application of the *Strickland* standard was not unreasonable and there is reasonable argument that counsel satisfied Strickland's deferential standard. As such, petitioner's objection is overruled.

### B. Respondents' objections

1. **Objections as to R&R's recommendation to grant petitioner's request for *habeas corpus* relief**.

At the outset, respondents' objections at section III (5)-(8) are largely a recitation of arguments raised before the Magistrate Judge both through filings and during the evidentiary

hearing. **ECF No. 198** at 19-27. Accordingly, *de novo* review is unwarranted. Nevertheless, the Court will review respondents' objections for clear error.[11]

As noted in the R&R, since petitioner is raising claims that were adjudicated on the merits in state court, this Court may only grant relief is he shows by clear and convincing evidence that the state court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254 (d)(1) & (2).

As discussed above, in the context of federal *habeas corpus* proceedings instituted by persons in custody pursuant to a state judgment, "state-court determinations of 'a factual issue' shall be presumed to be correct," unless one of the enumerated exceptions in §2254(d) is present. *See* 28 U.S.C. 2254(e)(1). Factual issues refer to "basic, primary, or historical facts," that is, "facts in the sense of a recital of external events and the credibility of their narrators." *Sanna*, 265 F.3d at 7. However, mixed questions of fact and law, which require the application of a legal standard to historical-fact determination are not subject to the presumption of correctness. *See cf. Pike*, 492 F.3d at 68 (holding that review of legal issues and of most mixed questions of fact and law is *de novo*). The First Circuit has held that subsection 2254(d)(2) applies exclusively to determinations

---

[11] At section III (9), respondents set forth various objections to specific findings in the R&R some of which will be reviewed *de novo*. **ECF No. 198** at 27-31. The *pro forma* objections at section III (9), (a) and (d) are NOTED and the information therein provided is corrected in this Opinion and Order.

of "basic, primary, or historical facts," while inferences, characterizations of the facts, and mixed questions of fact and law are more amenable to analysis under section 2254(d)(1). *See Dolinger v. Hall*, 302 F.3d 5, 8 (1st Cir. 2002). The Court agrees with the Magistrate Judge Carreño's finding that this case falls within this last category. *See* **ECF No. 188** at 34-36.

As such, Magistrate Judge Carreño was tasked with analyzing the following mixed questions of law and fact: whether petitioner's attorney satisfied *Strickland*'s standard and the state court applied *Strickland* reasonably, and whether circumstances surrounding the prosecutor's actions and omissions during the case affected petitioner's due process rights. This analysis required the review of numerous state court decisions, including the denial of petitioner's fourth motion for new trial partially based on the recantation of Ortíz-Burgos and Rivera-Mateo's witness testimony.

Magistrate Judge Carreño held a three-day hearing during which six witnesses testified. For petitioner, the following witnesses testified: Oliveras, attorney Torres, agent Sánchez, agent Vega, prosecutor Sánchez, and attorney Ortíz. The only witness for respondents was Carlos González-Roman, who succeeded Oliveras as Inspector General.

As consistently held by the Supreme Court, "a district judge need not hear the live testimony of a witness in order to accept the credibility determination of a magistrate judge." *United States v. Hernández-Rodríguez*, 443 F.3d 138, 147-48 (1st Cir. 2006) (citing *United States v. Raddatz*, 447 U.S. 667, 680-81 (1980)); *see also United States v. Andújar-Ortíz*, 575 F. Supp. 2d 373, 378 (D.P.R. 2008) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)) ("The

Magistrate Judge made credibility determinations regarding the testimonies of Defendant['s] witnesses and it is well settled law that when findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings; 'for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'") As such, the Court defers to Magistrate Judge Carreño's credibility findings regarding the witnesses' testimonies as set forth in the R&R, which are adopted integrally to this Opinion in the interest of expediency. *See* **ECF No. 188** at 9-24.

After a review of the record, the Court finds that state courts unreasonably applied clearly established federal law by: (1) denying petitioner's *Brady* claim, and (2) denying petitioner's ineffective assistance of counsel claim.

    **a.  Ineffective assistance of counsel**[12]

Petitioner argues that his former trial attorney, Ortíz, rendered ineffective assistance at both the trial and appellate level. Specifically, he proffers that counsel (1) failed to impeach agent Vega with evidence that contradicted his trial testimony; (2) did not correct the trial court's reliance on agent Vega's testimony that Ortíz-Burgos identified petitioner the next day; and (3) failed to provide a transcript of the suppression hearing on appeal. *See* **ECF No. 2-1, 104 & 180**.

---

[12] The Court will not address sections III (6) and (7) of respondents' motion since they are not objecting to the R&R's findings on such matters and simply emphasizing or clarifying issues that are on the record and of which the Court is aware. **ECF No. 198** at 21-23.

Earlier, the Court also adopted the R&R's finding that petitioner's counsel was not ineffective on appeal.[13] Absent an objection, the Court adopts Magistrate Judge Carreño's conclusion that petitioner's attorney was not ineffective in failing to correct the trial court regarding the date in which petitioner was identified by Ortíz-Burgos. **ECF No. 198** at 38-39. Likewise, for the reasons set forth below, the Court adopts the R&R's conclusion that attorney Ortíz's performance fell below an objective standard of reasonableness by failing to impeach agent Vega's testimony during trial.

On this issue, the R&R notes that during the criminal trial, agent Vega incorrectly testified that he interviewed the victims the day after the robbery, and at that time, Ortíz-Burgos identified petitioner as the perpetrator. **ECF No. 198** at 37. Even though his testimony regarding the timing of Ortíz-Burgos' identification of petitioner was incompatible with agent Sánchez's police report, petitioner's counsel failed to impeach agent Vega during cross examination with such evidence. Given the relevance of agent Vega's testimony as to the eyewitness identification of Ortíz-Burgos, the Magistrate Judge found that there is a reasonable probability that petitioner's guilty verdict would have been different but for counsel's error. The Court agrees that petitioner's counsel should have confronted agent Vega with the police reports or agent Sanchez's testimony.

In their objections, respondents argue that in the Resolution issued by the CFI pursuant to the new trial hearing held on June and July 2011, despite considering the inconsistencies in

---

[13] Namely, petitioner's objections on this issue were rejected by the Court.

agent Vega's testimony, the state court found that such statements would not alter the fact that Ortíz-Berrios identified petitioner as the perpetrator when he was initially interviewed by agents.[14] *See* **ECF No. 198** at 21. They further mention that Ortíz-Berríos' testimony was not the only evidence used by the government to convict petitioner. *Id.* at 19-21. Namely, the prosecution also presented Rivera-Mateo's testimony, who testified that while they were both incarcerated at the same correctional facility, petitioner told him about committing the robbery. *Id.* Lastly, respondents note that agent Sánchez's report is inconsistent with agent Vega's testimony exclusively as to the date when agent Vega interviewed Ortíz- Burgos. *Id.* at 20-21. Therefore, if agent Vega had been confronted with this discrepancy, he could have corrected the date of his interview with Ortíz-Burgos at that time. *Id.* Namely, that he interviewed Ortíz-Burgos and his wife for the first time on August 28, 1999, and not August 27.

As discussed above, the record shows that during the 2001 criminal trial, agent Vega testified that the day after the robbery, he went to the victim's home, interviewed the victims and that during said interview, Ortíz-Burgos identified petitioner as the perpetrator. **ECF No. 58-1** at 30. However, a review of the record as well as the witness' testimony during the evidentiary hearing shows that agent Sánchez was the one who interviewed Ortíz-Berríos and his family the day after the robbery. *See* **ECF No. 180-2**. Pursuant to the supplementary police report prepared by agent Sánchez, when he interviewed the victims the day after the robbery, Ortíz-Burgos did not identify petitioner as the perpetrator. *Id.* Instead, agent Sánchez noted that

---

[14] The Court notes that the record citation provided by respondents is incorrect.

the victims only provided generalized descriptions of the perpetrators. *Id*. Agent Sánchez, however, did not testify at the criminal trial and petitioner's counsel did not question agent Vega as to the discrepancy between his version of the events and the contents of agent Sánchez's police report.

The Court further notes that pursuant to the CFI's August 1, 2011 Resolution denying petitioner's new trial motion[15], agent Vega testified that he interviewed Ortíz-Burgos for the first time two days after the robbery, on August 28, 2000. **ECF No. 56-5** at 168. He also obtained Ortíz-Burgos' sworn statement identifying petitioner as the perpetrator on August 30, 2001. *Id*. at 169. At said hearing, agent Vega attested that when interviewed by Oliveras as part of the OIG investigation, he conceded that he must have conducted the interview on the 28th and not the 27th as stated during the criminal trial. **ECF No. 56-4** at 25-27. During the evidentiary hearing held before Magistrate Judge Carreño, agent Vega also admitted that he made a mistake regarding the date when he interviewed Ortíz-Burgos. **ECF No. 168** at 102; **ECF No. 169** at 13-14, 18. Indeed, the PRCA noted that agent Vega admitted that his testimony at the bench trial was erroneous regarding the date when Ortíz-Burgos identified petitioner. He testified that "the interview must have been on August 28, 2000." **ECF No. 139-14** at 33.

Therefore, it is evident that Agent Vega's testimony during the 2001 bench trial that he was the first to interview the victims of the robbery and that he conducted such interview the day after the robbery, where Ortíz- Burgos told him that petitioner was the perpetrator, was not

---

[15] Therein the CFI sets forth summaries of each witnesses' testimony.

true. It is also manifest that petitioner's attorney failed to confront agent Vega with contradictory evidence that was readily available, *i.e.*, agent Sánchez's police report from his interview with the victims the day after the robbery -, or to call agent Sánchez as a rebuttal witness.

The Court notes that the relevance of agent Vega's testimony hinged in part on the timing of Ortíz-Burgos' identification of petitioner. There is no question that Ortíz-Burgos identified petitioner as the perpetrator when he was first interviewed by agent Vega. Yet, the impeachment of agent Vega's testimony, which was offered to buttress the date and circumstances of the victim's eyewitness identification, may have put into question the veracity of Ortíz-Burgos' eyewitness identification. Especially considering that when Ortíz-Burgos was interviewed by police, namely by agent Sánchez, the day after the robbery, he did not identify petitioner as the culprit.

Considering that the trial judge's findings were largely based on the fact that Ortíz-Burgos identified petitioner the day after the robbery, which the trial judge described as "so fast" and "so significant", agent Vega's credibility and affirmation of this version of the facts was crucial.[16] **ECF No. 58-1** at 62. Even the state appellate courts afforded great weight to the fact that Ortíz-Burgos identified petitioner and informed agent Vega the next day. *See* **ECF No. 139-2** at 32.

---

[16] The trial court also afforded certain weight to the testimony of Rivera-Mateo, noting that he could have only known about the facts surrounding the robbery because petitioner told him about while they were both incarcerated. **ECF No. 58-1** at 64. However, he repeatedly emphasized that his decision was mainly based on Ortíz-Burgos eyewitness identification of petitioner the day after the robbery. *Id.* at 62-65.

Accordingly, the Court adopts the R&R's conclusion that counsel was ineffective in failing to impeach agent Vega, despite possessing the documentation that clearly contradicted his testimony, and this omission highly prejudiced petitioner.

### b. Prosecutorial misconduct

Objecting to the R&R's findings, respondents argue: (1) that prosecutor Sánchez was never sanctioned by the OIG because no irregularity was shown; (2) Oliveras never submitted a report regarding his investigation[17]; (3) during the evidentiary hearing, prosecutor Sánchez testified that he did not witness the conversation between Ortíz-Burgos and petitioner's former attorney, Torres, and regardless, the issue was brought to the trial judge's attention; and (4) as testified by prosecutor Sánchez, a witness' recantation is not grounds for a new trial.[18] **ECF No. 198** at 23-27. Respondents draw attention to the fact that during the evidentiary hearing, prosecutor Sánchez testified that, at the criminal trial, he confronted Ortíz-Burgos with attorney Torres' allegation that Ortíz-Burgos told attorney Torres that he was not sure if petitioner was the perpetrator. *Id.* Lastly, respondents object that the R&R's discussion about prosecutorial misconduct "tries to undermine the reliability" of Ortíz-Burgos' testimony despite the fact that the trial judge granted him full credibility. *Id.*

---

[17] *See* respondents' objection III (9)(i). **ECF No. 198** at 29. In their objections, respondents further point out that Oliveras was only experienced in administrative matters. *Id.* at 29-30. Aside from the fact that no report was ever issued by Oliveras, there is no question that his investigation into petitioner's case was an administrative and investigative matter, supervised by proper personnel at the Department of Justice.

[18] Respondents' objections at section III (b), (c) and (f) (**ECF No. 198** at 27-28) will be addressed throughout the discussion into the allegation of prosecutorial misconduct.

At the outset, it is undisputed that Oliveras never submitted a report regarding his investigation, that prosecutor Sánchez was not sanctioned by the OIG as a result of the investigations pertaining to the handling of petitioner's case, and that during the evidentiary hearing, prosecutor Sánchez testified that he did not witness the conversation where Ortíz-Burgos told attorney Torres that he had doubts as to whether petitioner was the perpetrator of the robbery[19]. However, such is not the case with respondents' categorical assertion that a witnesses' recantation is not grounds for a new trial – which is a matter of law - and that the R&R undermines the trial court's credibility findings as to Ortíz-Burgos' testimony – which will be addressed in turn below.

In the R&R, Magistrate Judge Carreño finds that prosecutor Sánchez's use of Ortíz-Burgos' testimony as the cornerstone of the case knowing he had doubts about his identification of petitioner as well as the use of agent Vega's false testimony constitutes prosecutorial misconduct. She further notes that:

> The pervasiveness of Sánchez-Rodríguez's conduct became evident during the *habeas* hearing when he made several startling statements. First, he stated that at some point the victim told him that he wasn't sure whether he wanted to continue with the case. Sánchez-Rodríguez responded that it was not up to the victim and continued to prosecute the criminal action without informing the Court of Ortíz-Burgos' doubts. Also, when asked about the exculpatory evidence detailed in the OIG's report, Sánchez-Rodríguez repeatedly dismissed it. **ECF No. 188** at 45.

In the R&R, the trial court's emphasis and reliance on Ortíz-Burgos' testimony bore great weight. Magistrate Judge Carreño noted that in convicting petitioner,

---

[19] The credibility of such testimony is a matter left for the Magistrate Judge that presided the evidentiary hearing.

…the trial court relied solely on his eyewitness identification. His testimony was not bolstered by corroborating evidence. The other two victims did not identify Cruz-Berríos. No physical evidence was recovered from the scene. The other two assailants were never identified. The suspicious car with government license plates, which was arguably used as a getaway vehicle, was not found. The only other piece of evidence presented was the testimony of inmate Rivera-Mateo who was allegedly told by Cruz-Berríos that he had committed the crime. The Judge, however, relied mainly on Ortíz-Burgos's eyewitness identification. Therefore, the "strength of the evidence" factor favors Cruz-Berríos. *See United States v. Casas*, 425 F.3d 23, 54 (1st Cir. 2005). **ECF No. 188** at 45-46.

The Court declines to adopt the reasoning that the use of agent Vega's false testimony constitutes prosecutorial misconduct since the record clearly shows that the discrepancy as to the date of agent Vega's first interview with Ortíz-Burgos was presumably a result of error or confusion on the prosecution's part.[20] However, the reliance on Ortíz-Burgos' eyewitness testimony despite the lack of veracity known to the prosecutor is another story. Upon reviewing the record, the Court finds that the state courts' factual determinations support a clear finding that prosecutor Sánchez incurred in inappropriate conduct.

During the criminal trial, petitioner's attorney (Ortíz) called attorney Torres as a witness to raise the issue that prior to the criminal trial Ortíz-Burgos' had told attorney Torres that he was not sure that petitioner was the perpetrator. *See* **ECF No. 58-1** at 45; **ECF No. 175** at 110. However, when asked whether he told attorney Torres that he was not sure that petitioner was the perpetrator, Ortíz-Burgos denied making those statements to attorney Torres and reiterated his identification of petitioner as the perpetrator. **ECF No. 58-1** at 15. Thus, at that time, the trial

---

[20] *See* respondents objection III (9)(g), **ECF No. 198** at 29.

court heard conflicting versions from Ortíz-Burgos and attorney Torres.

From the record today, however, it is evident that Ortíz-Burgos' doubts as to his eyewitness identification arose before petitioner's criminal trial and that prosecutor Sánchez was well aware of this fact. Ortíz-Burgos has expressly admitted as much under oath. A careful review of the record shows that at some point prior to the 2001 criminal trial, Ortíz-Burgos had told petitioner's former attorney, Torres, that he was not sure if petitioner was the perpetrator. *See* **ECF No. 58-1** at 45; **ECF No. 168** at 74-77; **ECF No. 56-3** at 92-93; **ECF No. 56-7** at 20-21; **ECF No. 56-4** at 32-33. Specifically, before petitioner's criminal trial began, attorney Torres ran into Ortíz-Burgos at the Aibonito courthouse. *Id.* Ortíz-Burgos complained to attorney Torres that the police were framing his son for a crime he did not commit to which attorney Torres replied: "that's the same thing you are doing" to petitioner. Ortíz-Burgos then responded that "he wasn't even sure that it was him," referring to petitioner as the perpetrator of the robbery. *Id.* Attorney Torres then told Ortíz-Burgos to tell prosecutor Sánchez about such doubts. *Id.* Attorney Torres also told Ortíz-Burgos that if he did not tell the prosecutor, he would do it. *Id.* In fact, both prosecutor Sánchez and attorney Torres have consistently conceded that attorney Torres informed the prosecutor about Ortíz-Burgos' statements. **ECF No. 56-7** at 21; **ECF No. 175** at 23-25. He also purportedly informed petitioner's counsel, attorney Ortíz.[21] **ECF No. 56-7** at 3-4.

---

[21] According to Ortíz-Burgos, attorney Ortíz was present when he told prosecutor Sánchez. **ECF No. 56-7** at 2. During the evidentiary hearing, attorney Ortíz testified that Ortíz Burgos told him that he had no interest in continuing with the proceedings against petitioner. **ECF No. 175** at 95-96, 109. Attorney Ortíz told Ortíz-Burgos to inform the prosecutor and told the prosecutor about petitioner's lack of interest in continuing with the case. **ECF No. 175** at 96, 99-100, 109-110. Attorney Ortíz clarified that Ortíz-Burgos did not tell him he had doubts as to whether

Later, in his sworn statement to the OIG, Ortíz-Burgos also stated that he had told prosecutor Sánchez that he was not sure "as to the person", referring to petitioner as the perpetrator of the robbery. *See* **ECF No. 56-4** at 131; **ECF No. at 56-7** at 3. At the new trial stage, the CFI assessed the conflicting evidence as to whether Ortíz-Burgos told prosecutor Sánchez directly that he was not sure if petitioner was the perpetrator. During the new trial hearing, Ortíz-Burgos testified that he informed prosecutor Sánchez that he didn't have interest in the case because he was not sure as to the identity of the person in the case, that is, petitioner. **ECF No. 56-4** at 131-132. Prosecutor Sánchez did not testify during said hearing.

In its Resolution denying petitioner's motion for new trial, the CFI concluded that prosecutor Sánchez knew Ortíz-Burgos was lying when he testified that he had not told attorney Torres that he had doubts as to his eyewitness identification. *See* **ECF No. 56-8** at 46. The CFI further held that prosecutor Sánchez should have alerted the court in the criminal trial that Ortíz-Burgos was lying. *Id.* Despite these clear factual findings that Ortíz-Burgos was lying at trial and that prosecutor Sánchez was aware of that fact, which unquestionably triggered a duty to alert the court, the CFI concludes that considering "the totality of the circumstances it [was] not proper to grant a new trial." *Id*. at 46. The CFI's adjudication clearly resulted in a decision contrary to clearly established federal law or Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). It is well settled that a new trial is required if there is a reasonable likelihood that the

---

petitioner was the perpetrator. He also denied that prosecutor Sánchez was part of his conversation with Ortíz-Burgos.

false testimony of a witness could have affected the judgment of the jury, or as in this case, the judge in a bench trial. *Napue*, 360 U.S. 264; *Strickler*, 527 U.S. at 280-81. As the First Circuit stated, if the state court misunderstands this, "AEDPA would not shield the state court's decision on prejudice from plenary review." *Perkins*, 586 F.3d at 119.

The CFI's express finding that Ortíz-Burgos' testimony at the criminal trial was perjured and that prosecutor Sánchez knew as much fits squarely within *Napue* and *Strickler*. *See cf. González-González*, 258 F.3d at 22 ("a finding that there is a colorable claim the government knowingly used perjured testimony is the necessary predicate for asking whether the Strickler/Kyle/Bagley standard applies. Here, the district court did not make an express finding about whether Giraldo's testimony was perjured, and thus did not find whether the government's use of the testimony, if perjured, was knowing.") Evidently, this crucial omission was not brought to the trial court's attention and hinder the truth-seeking function of the trial process.

In an ill-fated attempt, respondents contend that the CFI's determination that prosecutor Sánchez should have alerted the trial court is "wrong" since he could not have stated that the witness was giving false testimony considering that he was not part of the conversation between attorney Torres and Ortíz-Berríos. *See* **ECF No. 198** at 28. However, respondents' argument misses the point entirely. After assessing all the evidence, the CFI expressly concluded that Ortíz-Burgos lied on the stand, that prosecutor Sánchez knew he was not telling the truth but

failed to alert the court or intervene in any way.[22] Despite this clear violation of petitioner's rights, the CFI refused to afford petitioner a new trial.

The Court further notes that during the evidentiary hearing, Magistrate Judge Carreño did not find prosecutor Sánchez's testimony credible when he stated that Ortíz-Burgos never told him that he had doubts as to whether petitioner was the perpetrator. In fact, during said hearing, prosecutor Sánchez admitted that attorney Torres informed him that Ortíz-Burgos had expressed doubts as to whether petitioner was the perpetrator. **ECF No. 175** at 26.

The Court harbors no qualms that petitioner's conviction rested squarely on the credibility afforded by the trial judge to Ortíz-Burgos' unwavering eyewitness identification of petitioner. At the time, the trial judge, faced with conflicting evidence, afforded great weight to how "fast" Ortíz-Burgos identified petitioner and the fact that he knew petitioner prior to the robbery. Precisely the trial court's reliance on Ortíz-Burgos' eyewitness identification to convict petitioner, and the CFI's factual conclusion that prosecutor Sánchez knew that his star witness had lied under oath about such identification, supports a finding of prosecutorial misconduct in this case and warranted a new trial.

Thus, the CFI's Resolution denying petitioner's motion for new trial resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Namely, as noted in the R&R, prosecutor Sánchez's use of Ortíz-Burgos testimony as the

---

[22] Respondents' objections at III(9)(b) and (c) deal with credibility issues which were adjudicated by the CFI and the Magistrate Judge to which this Court affords due deference.

cornerstone of the case knowing he had doubts of the identification satisfies Supreme Court case law that has consistently held that a new trial is required if there is a reasonable likelihood that the false testimony of a witness could have affected the judgment of the jury. *See cf. Giglio v. United States*, 405 U.S. 150, 154-155 (1972) (where the Government's case depended almost entirely on the perjured testimony and without it there could have been no indictment and no evidence to carry the case to the jury, said witness' credibility as a witness was an important issue in the case, and the jury was entitled to know of any evidence relevant to his credibility). The defendant's due process rights are also violated when the state allows false evidence to go uncorrected. *See Napue*, 360 U.S. at 269.

An analysis of this case under the factors weighed by the First Circuit point to a finding that the prosecutorial misconduct in this case so poisoned the well that a new trial is required. *See González-González*, 258 F.3d at 25. The knowing use of a star eyewitness who perjures himself during trial certainly satisfies the criteria of severity of the misconduct. Moreover, as the R&R points out, the strength of the case or, more pointedly, lack of evidence against petitioner is crucial in this case. Specifically, there was no physical evidence tying petitioner to the robbery and the other two victims did not identify him.

The only other piece of evidence was Rivera-Mateo's testimony that petitioner purportedly told him about committing the robbery. However, after addressing inconsistencies in Rivera-Mateo's testimony, the trial judge emphasized "[b]ut I think that the essential here is the testimony of Mr. Ángel Antonio Ortíz…" **ECF No. 58-1** at 64-65. Moreover, Rivera-Mateo

recanted his testimony both via sworn statement to the OIG and during the new trial hearing before the CFI. *See* **ECF No. 56-7** at 10-17; **ECF No. 56-4** at 115-118.[23] Even though the CFI did not afford credibility to Rivera-Mateos' recantation[24], this does not change the fact that the trial court's ultimate finding of guilt rested squarely on Ortíz-Burgos' eyewitness testimony. Thus, there was no extraordinary amount of reliable evidence supporting petitioner's conviction aside from Ortíz-Burgos' unwavering testimony during the criminal trial. The prosecutor's failure to alert the trial judge about Ortíz-Burgos' false testimony irremediably poisoned the well.

In the R&R, the Magistrate Judge also imputes prosecutorial misconduct to prosecutor Sánchez in part because Ortíz-Burgos also told him that he wasn't sure whether he wanted to continue with the case. However, it is well settled that a victim's lack of interest in continuing a criminal proceeding does not defeat the state's interest in criminally prosecuting an accused.[25] As explained above, the improper conduct arises from knowing a witness is lying under oath during a criminal trial and letting it go uncorrected. Certainly, prosecutor Sánchez's dismissive statement that "victims recant all the time" does nothing to assuage the Court's dismay over the complete disregard as to the star witnesses' express recanting, especially when he knew Ortíz-

---

[23] Rivera-Mateo, admittedly a recovering drug addict, testified that he knew the victim Ortíz-Burgos well, went to his home after being released from prison, whereupon Ortíz-Burgos told him to incriminate petitioner and provided Rviera-Mateo with information about the robbery in order to incriminate petitioner. He further testified that Ortíz-Burgos even purchased drugs for him to convince him to incriminate petitioner. **ECF No. 56-4 at** 115-118.

[24] The CFI ultimately refused to afford credibility to his recantation because Rivera-Mateo was incarcerated at the date of petitioner's criminal trial, despite testifying that on that date Ortíz-Burgos purchased drugs for him prior to taking him to the trial to testify against petitioner. **ECF No. 139-14 at** 34-35.

[25] *See* respondents' objection at III (9)(l). **ECF No. 198** at 30.

Burgos lied under oath during the criminal trial.[26]

### c.  New evidence

One of the main issues addressed by the state court via petitioner's new trial motion was the new evidence obtained via the OIG's investigation into petitioner's criminal trial, consisting of the sworn statements by Ortíz-Burgos and Rivera-Mateo recanting their previous testimony at trial, as well as statements from various witnesses involved in the criminal proceedings.

After the new trial hearing, the CFI essentially held that the evidence submitted by petitioner was not in fact new. In a convoluted argument of sorts, the CFI concludes that even if such evidence was considered "new", the trial court had measured the contradictions in the witnesses' testimonies during the criminal proceedings thus averting any possible prejudice. The CFI further concluded that Rivera-Mateo's recantation was not credible and rejected Ortíz-Burgos' recantation of his eyewitness testimony without further ado. The CFI further held that such evidence, *i.e.*, Ortíz-Burgos' sworn statement recanting his testimony at trial, did not make a different result probable if a new trial were granted.

On one hand, the state court's decision fails to take into consideration the fact that evidence cannot be cumulative when it goes to an issue that was not known at the time of trial. *Norton v. Spencer*, 351 F.3d 1, 7 (1st Cir. 2003). The trial court was not privy to the fact that Ortíz-

---

[26] Respondents "make a note" as to the R&R throwing "shade" over prosecutor Sánchez's testimony to the effect that recanting happens frequently and asserts such statement does not make a new trial warranted. **ECF No. 198** at 29. Albeit this is not a proper objection, the Court noted that Magistrate Judge Carreño's credibility determination are soundly based on the record and as such is adopted by this Court.

Burgos perjured himself on the stand, with the prosecution's knowledge. Albeit recantations are generally viewed with suspicion[27], they cannot be simply dismissed as unreliable without more. *See Schlup*, 513 U.S. at 328. Particularly, in a case such as this, where the prosecution was aware that the main eyewitness had expressed that he was not sure about the perpetrator's identity prior to the criminal trial, and the recantation via sworn statement hinges precisely on such information. Most importantly, the CFI discredits Ortíz-Burgos' recantation while simultaneously finding that he lied during the criminal trial, and that prosecutor Sánchez was aware of such perjured testimony. Such holding is contrary to Puerto Rico Supreme Court precedent which states that in determining whether a retraction warrants a new trial, the court must assess whether the retraction puts into question the veracity of the witness' testimony at trial. *Pueblo de Puerto Rico v. Chévere Heredia*, 139 D.P.R. 1, 37, 1995 PR Sup. LEXIS 309, *55. The CFI's finding that Ortíz-Burgos lied during the criminal trial necessarily warranted a new trial. These irreconcilable findings fall squarely within section 2254(d)'s requirement of "incorrectness beyond error." If further denotes the CFI's misunderstanding that the use of perjured testimony is fundamentally unfair and cannot continue uncorrected at this juncture. *See Agurs*, 427 U.S. at 104 (when the state court misunderstands that the use of perjured testimony is a fundamental violation of due process rights, "AEDPA would not shield the state court's decision on prejudice from plenary review.")

---

[27] The Court further notes that the facts of this case are easily distinguishable from *Pueblo de Puerto Rico v. Chévere Heredia*, where there was ample evidence aside from the recanting witness' testimony, and the principal witness recanted but later denied the truthfulness of such recanting and restated her original version of the facts.

To conclude, it would be remiss to disregard that a careful review of the record before this Court shows that petitioner's repeated attempts to be heard in the state courts kept falling on deaf ears despite their merits. Petitioner's first three motions for new trial were essentially summarily dismissed by the CFI without hearings and in a few weeks' time. *See* **ECF No. 139-1** at 2-3. Predictably, his claims suffered a similar fate on the appellate level. For instance, after the denial of his third motion for new trial alleging ineffective assistance of counsel and request for an evidentiary hearing, petitioner submitted a writ of *certiorari* to the PRCA questioning the CFI's decision. In its May 15, 2007 Resolution denying petitioner's request for *certiorari*, the PRCA noted that upon denying petitioner's request, the CFI held that petitioner's "request claimed is an invention and does not constitute grounds for declaring [sic] judgment issued to be illegal. In this way, the petitioner is attempting to review a valid and final and firm judgment. This judgment cannot be reviewed by this Court." *See* **ECF No. 139-1** at 3. The CFI's ruling clearly undermines P.R. Rule of Civil Procedure 192.1's clear mandate that a person in custody pursuant to the CFI's decision, alleging that his sentence was imposed in violation to the laws and Constitution of the United States, may move for a new trial. Similarly, in its May 2, 2012 decision denying petitioner's writ of *certiorari*, seeking relief from the CFI's denial of his fourth motion for new trial, the PRCA states "we cannot overlook that petitioner has presented several remedies that had been attended by the court and that essentially bring forth the same allegations." **ECF No. 22-1** at 20. This fact does not preclude affording relief when new evidence points to possible violations of constitutional rights or the existence of new evidence which could

have led to a different resolution.

In a similar vein, after citing various of the witnesses' testimonies at the new trial hearing, the PRCA found that the "sworn statements by the agents do not constitute new evidence as alleged by petitioner since the same were considered by the instance forum during the identification suppression hearing." **ECF No. 22-1** at 20. However, there is no evidence suggesting that PRPD agents even testified at petitioner's suppression hearing. *See* E**CF No. 186-2** (suppression hearing transcript). Also, the PRCA ignores that agent Vega's testimony at trial was not correct, it was not impeached by petitioner's counsel and thus the trial court never learned that agent Vega was not the first PRPD officer to interview the victims and that he did not interview the victims the day after the robbery. Thus, the PRCA's finding that the sworn statements, which include testimony under oath by agents Vega and Sánchez, "bring nothing on behalf of petitioner since the same was stipulated by the parties and assessed by the sentencing forum" is not supported by the record. *Id.*

Even the PRSC adopted the PRCA's reasoning without thorough consideration when ruling that "sworn statements by agents do not constitute new evidence…" and that "these statements were considered by the instance forum during the suppression hearing of the identification that preceded the full criminal trial." **ECF No. 139-18** at 1. The PRSC further concluded that the statements "[did] not contribute anything new on behalf of petition since that evidence was stipulated by the parties and assessed by the sentencing forum." *Id.* These conclusions as well are entirely unsupported by the record. Pointedly, the PRSC also highlights

petitioner's requests for "several remedies...that essentially contain the same statements" when the record before this Court shows this to be factually incorrect. *Id.* at 2.

Undeniably, the sworn statements of Ortíz-Burgos and Rivera-Mateo recanting their testimonies at trial are new evidence. They were obtained in 2010 as part of an investigation by the OIG. Rivera-Mateo had not recanted prior to such statement. Albeit Ortíz-Burgos had mentioned his doubts prior to the trial, the fact that the trial court at some point assessed evidence as to whether Ortíz-Burgos had indeed expressed doubts as to petitioner's guilty does not carry the same weight as a sworn statement under penalty of perjury by the star eyewitness. Especially when the recanting witness has nothing to gain at this juncture and swore under oath that he expressed his doubts prior to the criminal trial which led to petitioner's conviction. Any delay in procuring these statements is solely due to the fact that they were obtained as a result of an independent investigation regarding irregularities in the criminal proceedings not because petitioner idly sat back and failed to pursue to his rights, despite every state forum's swift dismissal of his claims.

To conclude, as noted in the R&R, the conviction of petitioner largely relied on the Ortíz-Burgos' eyewitness testimony which we now know was perjured and which he in fact recanted. In so doing, Magistrate Judge Carreño pointed out that the trial judge:

> who presided at Cruz-Berríos' trial wrote that the testimonies were "not clear" and "not pure" and that there had been "large contradictions." See Docket No. 58-1 at pgs. 60-62. Despite those red flags, the Judge gave great weight to the eyewitness identification because Ortíz- Burgos "knew the defendant" and identified him "fast." He also gave some consideration to the testimony of Rivera- Mateo because

"he had no way of knowing about the facts of the case" unless Cruz-Berríos had told him. However, the Judge specifically stated that the "essential" factor in his decision was the testimony of Ortíz-Burgos. **Docket No. 58-1** at pgs. 64-65.

There is no question that had Ortíz-Burgos testified at the criminal trial that he was not sure whether petitioner was the perpetrator of the robbery or prosecutor Sánchez would have alerted the trial judge that Ortíz-Burgos lied under oath, there is a substantial likelihood petitioner would not have been convicted. As such, the Court finds that petitioner is entitled to a new trial.

### IV.    Conclusion

Considering the foregoing, the Court adopts the R&R and petitioner's request for *habeas* relief is **GRANTED**.  The case is remanded to the state court for a new trial as expeditiously as possible. The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**